FILED & ENTERED

SEP 08 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tatum        DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

In re:

MORREALE HOTELS LLC,

　　　　　　　　Debtor.

Misc. Nos. 2:13-mp-00140-RK
and  2:13-mp-00141-RK

**MEMORANDUM DECISION ON
MOTIONS OF OAKTREE CAPITAL
MANAGEMENT, L.P. AND OAKTREE
GROUP HOLDINGS GP, LLC FOR
ATTORNEYS' FEES AND EXPENSES**

　　　Pending before the court in these two miscellaneous cases are the duplicate
joint motions of Oaktree Capital Management, L.P. ("Oaktree, L.P.") and Oaktree
Capital Group Holdings, LLC ("Oaktree, LLC") for Attorneys' Fees and Expenses, filed
on December 16, 2013, for an award of $28,155.00 in attorneys' fees and $1,750.00 in
costs.  *Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management,
L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141-RK, Docket
No. 14 ("2:13-mp-00141 Motion") at 1:2–6;  *Oaktree Capital Group Holdings GP, LLC
and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,*
Case No. 2:13-mp-00140-RK, Docket No. 19 ("2:13-mp-00140 Motion") at 2:2-6.  The
movants, Oaktree, L.P., and Oaktree, LLC, for purposes of this motion will be referred
to as the "Oaktree Entities."  Debtor Morreale Hotels, LLC, filed these two separate

1  miscellaneous actions to enforce document subpoenas issued to each of the movants

2  and the movants have now filed joint and duplicate motions for an award of attorneys'

3  fees and costs incurred in defending against these subpoenas in each of these

4  miscellaneous actions.

5      Having reviewed the moving, opposing, and reply papers, the court takes the

6  motions under submission on the papers, and grants in part and denies in part the

7  motions for the following reasons.

8                                    **Background**

9      Morreale Hotels, LLC, ("Debtor"), a Colorado limited liability company, filed a

10  voluntary Chapter 11 bankruptcy petition on December 14, 2012, in the United States

11  Bankruptcy Court for the District of Colorado ("Colorado Bankruptcy Court") Case No.

12  12-35230-ABC. *Motion by Debtor Morreale Hotels, LLC, to Enforce Subpoena and*

13  *Compel the Production of Documents Pursuant to Subpoena,* Case No. 2:13-mp-

14  00141-RK, Docket No. 1 at 5:2–4; *Motion by Debtor Morreale Hotels, LLC, to Enforce*

15  *Subpoena and Compel the Production of Documents Pursuant to Subpoena,* Case No.

16  2:13-mp-00140-RK, Docket No. 1 at 5:2-4. Debtor is the owner of two pieces of real

17  property in Denver, Colorado, the first located at 101-115 Broadway, also known as 21

18  West 1st Avenue ("Broadway Property") and the second located at 3015 E. Colfax Ave.

19  ("Colfax Property") (collectively, the "Properties"). *Id.* at 5:8–11. 2011-SIP-1

20  CRE/CADC Venture, LLC, ("SIP") is the owner and holder of two promissory notes from

21  Debtor that were assigned to SIP on August 4, 2011. *2:13-mp-00141-RK Motion* at

22  1:16–17; *2:13-mp-00140 Motion* at 2:16-17. Oaktree LLC is an investor in Acorn Loan

23  Portfolio Private Owner IV, LLC ("Acorn") which is in turn an investor in SIP, with Sabal

24  Financial Group, L.P., ("Sabal") acting as manager of SIP. *Declaration of Leigh A.*

25  *Flanagan Esq. in Support of the Debtor's Opposition to Oaktree Capital Group Holdings*

26  *GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and*

27  *Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 17 at ¶ 4(a); *Declaration of Leigh*

28  *A. Flanagan Esq. in Support of the Debtor's Opposition to Oaktree Capital Group*

1 | *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

2 | *and Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 23 at ¶ 4(a).  These

3 | background facts are not disputed.

4 |       On May 3, 2013, the United States Trustee ("UST") filed a Motion to Dismiss

5 | Debtor's Chapter 11 bankruptcy case pursuant to 11 U.S.C. § 1112(b)(4), in the

6 | Colorado Bankruptcy Court.  *2:13-mp-00141-RK Motion* at 1:27–28; *2:13-mp-00140-RK*

7 | *Motion* at 2:27-28.  On May 16, 2013, SIP filed its Motion for Relief from Stay pursuant

8 | to 11 U.S.C. § 362(d)(2).  *2:13-mp-00141-RK Motion* at 1:28–2:1; *2:13-mp-00140-RK*

9 | *Motion* at 2:28-3:1.  On June 12, 2013, Debtor filed its First Amended Plan of

10 | Reorganization (the "Plan").   *2:13-mp-00141-RK Motion* at 2:1–2; *2:13-mp-00140-RK*

11 | *Motion* at 3:1-2.  Litigation then commenced on three contested matters: the UST

12 | Motion to Dismiss, SIP's Motion for Relief from Stay, and Debtor's Plan.  *2:13-mp-*

13 | *00141-RK Motion* at 2:3-4; *2:13-mp-00140-RK Motion* at 3:3-4.  On August 20, 2013,

14 | Debtor issued its First Set of Written Discovery to SIP which included a request for SIP

15 | to produce documents related to the Oaktree Entities and individuals in these entities.

16 | *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

17 | *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

18 | 00141, Docket No. 16 at 2:23–24; *Debtor's Opposition to Oaktree Capital Group*

19 | *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

20 | *and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22 at 2:23-24.  SIP lodged

21 | relevancy and other objections against Debtor's discovery request.  *2:13-mp-00141-RK*

22 | *Motion* at 2:11–12; *2:13-mp-00140-RK Motion* at 3:11-12.  Debtor filed a Motion to

23 | Enforce Subpoena in the Colorado Bankruptcy Court, which heard the discovery

24 | dispute on September 16, 2013, and September 17, 2013.  *Debtor's Opposition to*

25 | *Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s*

26 | *Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at

27 | 3:6–8;  *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree*

28 | *Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-

1    mp-00140-RK, Docket No. 22 at 3:6-8.  The Colorado Bankruptcy Court ruled that

2    Debtor could not propound discovery on the Oaktree Entities through SIP; however,

3    that court indicated that Debtor could serve a third-party subpoena on the Oaktree

4    Entities if Debtor sought discovery from that entity.  *2:13-mp-00141-RK Motion* at 2:18–

5    21; *2:13-mp-00140-RK Motion* at 3:18-21.

6            Thereafter, on October 2, 2013, Debtor served subpoenas duces tecum on the

7    Oaktree Entities to which the Oaktree Entities filed objections.  *2:13-mp-00141-RK*

8    *Motion* at 2:23–3:3; *2:13-mp-00140-RK Motion* at 3:23-4:3.  On October 29, 2013, the

9    Oaktree Entities filed two Motions to Quash Debtor's Subpoena in the United States

10   District Court for the Central District of California (the "District Court").  *2:13-mp-00141-*

11   *RK Motion* at 3:6-8; *2:13-mp-00140-RK Motion* at 4:6-8.  On November 1, 2013, Debtor

12   filed two Motions to Compel Production of Documents Pursuant to the Subpoena

13   against each Oaktree Entity, thereby commencing two miscellaneous proceedings in

14   this court. *2:13-mp-00141-RK Motion* at 3:9-10; *2:13-mp-00140-RK Motion* at 4:9-10.

15   On November 6, 2013, the court issued orders to show cause why each Oaktree Entity

16   should not be held in contempt for failure to comply with its respective subpoena.

17   *Order to Show Cause Why Non-Party Deponent Should Not be Held in Contempt,* Case

18   No. 2:13-mp-00141, Docket No. 2 at 2:1–4;  *Order to Show Cause Why Non-Party*

19   *Deponent Should Not be Held in Contempt,* Case No. 2:13-mp-00141, Docket No. 2 at

20   2:1–4.  Debtor and the Oaktree Entities subsequently stipulated to have this court rule

21   on both the Motions to Quash Subpoena filed in the District Court and the Motions to

22   Enforce Subpoena filed in this court.  *2:13-mp-00141-RK Motion* at 3:10-12; *2:13-mp-*

23   *00140-RK Motion* at 4:10–12.

24          The Motions to Quash Subpoena and Motions to Enforce Subpoena came on for

25   hearing before the undersigned United States Bankruptcy Judge on November 14,

26   2013, November 18, 2013, November 20, 2013 and November 21, 2013.  The court

27   ruled and entered an order on December 4, 2013, granting Oaktree LLC's Motion to

28   Quash Subpoena in its entirety.  *Order on Oaktree Capital Group Holdings GP, LLC's*

4

1  *Motion to Quash the Debtor's Third Party Subpoena*, Case No. 2:13-mp-00141-RK

2  Docket No. 11 at 2:16-20;  *Order on Oaktree Capital Group Holdings GP, LLC's Motion*

3  *to Quash the Debtor's Third Party Subpoena*, Case No. 2:13-mp-00140-RK Docket No.

4  12 at 2:16-20; *Order on Order to Show Cause on Debtor Morreale Hotels, LLC's Motion*

5  *to Enforce Subpoena and Compel the Production of Documents Pursuant to Subpoena,*

6  Case No. 2:13-mp-00141-RK, Docket No. 10 at 2:17-21; *Order on Order to Show*

7  *Cause on Debtor Morreale Hotels, LLC's Motion to Enforce Subpoena and Compel the*

8  *Production of Documents Pursuant to Subpoena,* Case No. 2:13-mp-00141-RK, Docket

9  No. 13 at 2:17-21.  A separate order was entered on the same day denying Debtor's

10  Motion to Enforce Subpoena in its entirety.  *Order on Order to Show Cause On*

11  *Debtor's Motion to Enforce Subpoena and Compel the Production of Documents*

12  *Pursuant to Subpoena,* Docket No. 10 at 2:13.  The Orders provided that Oaktree LLC

13  may file a motion for attorneys' fees and expenses, and once filed and served, Debtor

14  would have seven days to file a response; following which, Oaktree LLC could reply to

15  the response.  *Order on Oaktree Capital Group Holdings GP, LLC's Motion to Quash*

16  *the Debtor's Third Party Subpoena*, Case No. 2:13-mp-00141-RK Docket No. 11 at

17  2:16-20;  *Order on Oaktree Capital Group Holdings GP, LLC's Motion to Quash the*

18  *Debtor's Third Party Subpoena*, Case No. 2:13-mp-00140-RK Docket No. 12 at 2:16-

19  20; *Order on Order to Show Cause on Debtor Morreale Hotels, LLC's Motion to Enforce*

20  *Subpoena and Compel the Production of Documents Pursuant to Subpoena,* Case No.

21  2:13-mp-00141-RK, Docket No. 10 at 2:17-21; *Order on Order to Show Cause on*

22  *Debtor Morreale Hotels, LLC's Motion to Enforce Subpoena and Compel the Production*

23  *of Documents Pursuant to Subpoena,* Case No. 2:13-mp-00141-RK, Docket No. 13 at

24  2:17-21.

25        On December 16, 2013, the Oaktree Entities timely filed the Motions for

26  Attorneys' Fees (one motion by Oaktree, L.P., and one motion by Oaktree, LLC),

27  contending that: (1) the Oaktree Entities are entitled to recover attorneys' fees and

28

1  costs under Federal Rule of Civil Procedure ("FRCP" or "Fed. R. Civ. P.") 45(d)(1)[1]

2  because the Debtor did not take reasonable steps to avoid imposing undue burden or

3  expense on the Oaktree Entities; (2) alternatively, the Oaktree Entities can also recover

4  their reasonable attorneys' fees and costs under FRCP 37(a)(2) and FRCP 37(a)(5)

5  because its Motions to Quash were granted, Debtor's Motions to Compel were denied,

6  and Debtor's Motions were not substantially justified; and (3) the Oaktree Entities are

7  entitled to recover their attorneys' fees and costs under applicable Local Bankruptcy

8  Rule 7054-1.  *2:13-mp-00141-RK Motion* at 4:1-9:16; *2:13-mp-00140-RK Motion* at 5:1–

9  10:16.  The Oaktree Entities further contended that their request for attorneys' fees is

10 reasonable under the Lodestar Method, that the Oaktree Entities expended $28,155.00

11 in attorneys' fees and $1,750.00 in  costs to defend against Debtor's Subpoena and, as

12 the prevailing parties, the Oaktree Entities are entitled to reimbursement for such

13 attorneys' fees and costs.  *2:13-mp-00141-RK Motion* at 8:17-9:26; *2:13-mp-00140-RK*

14 *Motion* at 9:17–10:26.  Based on the declarations of Sharon Z. Weiss, counsel for the

15 Oaktree Entities, filed in these cases, the $28,155.00 represented the fees for 66.80

16 hours of service by outside counsel for the Oaktree Entities, and the amount of

17 $1,750.00 represented the reasonable value of the time spent on these matters by Cary

18 Kleinman, in-house counsel for the Oaktree Entitites, (3.5 hours at $500 per hour).

19 *2:13-mp-00141-RK Motion* at 13:3-14:22; *2:13-mp-00140-RK Motion* at 14:3-15:22.

20      On December 23, 2013, Debtor filed timely responses opposing the motions

21 asserting that: (1) Debtor took reasonable steps to avoid imposing any undue burden or

22 expense on the Oaktree Entities; (2) Debtor was substantially justified in pursuing the

23 discovery; and (3) the Oaktree Entities' fees are unreasonable.  *Debtor's Opposition to*

24 *Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s*

25 *Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at

26

27 [1] This rule was amended in 2013 (formerly FRCP 45(c)(1) at the time the Motion for Attorneys' Fees was filed).

28

6

1    10:10-13:2; *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and*

2    *Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case

3    No. 2:13-mp-00140-RK, Docket No. 22 at 11:10-14:2.  Debtor argues it did attempt to

4    avoid imposing any undue burden and resolve the discovery disputes by: (a) offering to

5    narrow the two subpoenas to one subpoena if the Oaktree Entities would advise Debtor

6    as to its corporate structure and identify which Oaktree entity had involvement with

7    Debtor's loans; (b)  voluntarily withdrawing document requests nos. 2, 3, 4, 16, 17, 24,

8    and 26 prior to any motion being filed before this court; (c) limiting the discovery

9    requests to those that SIP either agreed to answer or was ordered to answer by the

10   Colorado Bankruptcy Court; (d) attempting to bring the matters before just one

11   California court, instead of two; and (e) agreeing to narrow the definition of "Oaktree" in

12   the Subpoena and eventually limiting the discovery request to include only a list of

13   approximately eleven individuals.  *Debtor's Opposition to Oaktree Capital Group*

14   *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

15   *and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 8:7-9:13 and 11:1-4;

16   *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

17   *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

18   00140-RK, Docket No. 22 at 9:7-10:13 and 12:1-4.  Debtor also argues that it attempted

19   to gain a better understanding of the Oaktree Entities' role in this matter and its

20   corporate structure, but its efforts were opposed by the Oaktree Entities.   *Debtor's*

21   *Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

22   *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

23   00141, Docket No. 16 at 10:27-11:1; *Debtor's Opposition to Oaktree Capital Group*

24   *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

25   *and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22 at 11:27-12:1.  Debtor

26   argues it was substantially justified in pursuing discovery because Debtor was following

27   the guidance of Judge Campbell of the Colorado Bankruptcy Court in issuing a

28   subpoena directly on the Oaktree Entities, and Debtor was relying upon the statements

of the Federal Deposit Insurance Corporation ("FDIC") to contact the Oaktree Entities. *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 11:19-26; *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22 at 12:19-26.

On December 30, 2013, the Oaktree Entities filed timely replies contending that: (1) Debtor was not substantially justified in issuing its subpoena because Debtor wrongfully focuses on the representations of others to show that it was substantially justified in pursuing the Oaktree discovery and reasonable people could not differ as to whether Oaktree had any relevant information; (2) Debtor fails to show that it took reasonable steps to avoid imposing undue burden or expense on the Oaktree Entities pursuant to FRCP 45(d)(1) because the concessions that the Debtor made do not detract from the fact that Debtor was requesting the Oaktree Entities to provide information from individuals far removed from the deal; (3) Debtor's Opposition is an improper motion for reconsideration; and (4) the Oaktree Entities' attorneys' fees and expenses are reasonable. *Reply of Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's Fees and Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 19, at 2:23–9:7; *Reply of Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's Fees and Expenses,* Case No. 2:13-mp-00140-RK Docket No. 25, at 2:23–9:7.

On March 10, 2014, the court entered an Order for Surreply on the Oaktree Entities' Motion for Attorneys' Fees and Expenses. *Order for Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 20 at 1:24-27; *Order for Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 20 at 1:24-27. In this order, the court ordered that Debtor's

surreply shall address why attorneys' fees and expenses should not be awarded in favor of the Oaktree Entities on grounds that the Motions to Quash Subpoena were entirely granted and that it appeared to the court that Debtor failed to articulate a reason that the discovery it requested from the Oaktree Entities was relevant in any way.  *Order for Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 20 at 2:3-10; *Order for Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 20 at 2:3-10.

On March 24, 2014, Debtor filed Surreplies essentially reiterating its arguments for why the requested discovery material was relevant, namely that: (1) Debtor was relying on communications from the FDIC and the Oaktree Entities themselves in believing that the Oaktree Entities were involved in Debtor's loans and may have had information that was relevant to the then-pending Motion for Relief from Stay, Chapter 11 Plan confirmation hearings, and Motion to Dismiss; and (2) Debtor's discovery requests to Oaktree were primarily aimed at obtaining information or documents reasonably calculated to lead to discovering admissible evidence on valuation, evidence to defend against SIP's allegations of bad faith, and other allegations asserted against Debtor.  *Debtor's Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC's Motions for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 24 at 1:15–22; 2:21–27;  *Debtor's Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 30 at 1:15–22; 2:21–27.

On March 28, 2014, the court ordered the Oaktree Entities to submit a detailed account of their attorneys' fee statements with specific and detailed billing entries in support of the Motion for Attorneys' Fees to determine the reasonableness of the fee requests.  *Order Requiring the Oaktree Entities to File and Serve Attorneys' Fee*

1   *Statements in Support of Motions for Attorneys' Fees and Expenses*, Case No. 2:13-

2   mp-00141-RK, Docket No. 25 at 1:22–27; *Order Requiring the Oaktree Entities to File*

3   *and Serve Attorneys' Fee Statements in Support of Motions for Attorneys' Fees and*

4   *Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 31 at 1:22–27.  The court further

5   ordered that Debtor file any objections to the reasonableness of the claimed fees on the

6   billing statements submitted by the Oaktree Entities.  *Order Requiring the Oaktree*

7   *Entities to File and Serve Attorneys' Fee Statements in Support of Motions for*

8   *Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 25 at 2:4-6;

9   *Order Requiring the Oaktree Entities to File and Serve Attorneys' Fee Statements in*

10  *Support of Motions for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00140-RK,

11  Docket No. 31 at 2:4-6.

12         On April 14, 2014, pursuant to the court's order, the Oaktree Entities filed

13  Statements in Support of the Motion for Attorneys' Fees and Expense by attaching a

14  declaration of lead counsel for the Oaktree Entities, Sharon Z. Weiss, and including a

15  spreadsheet containing a detailed account of all billing entries associated with these

16  matters.  *Oaktree Capital Group Holdings GP, LLC'S Statement in Support of Motion for*

17  *Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 31 at 1:1–7;

18  *Oaktree Capital Group Holdings GP, LLC'S Statement in Support of Motion for*

19  *Attorneys' Fees and Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 37 at 1:1–7.

20  The total amount of attorneys' fees and costs as asserted in Oaktree Entities'

21  supporting statements is $49,495.00.  *Oaktree Capital Group Holdings GP, LLC'S*

22  *Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No. 2:13-mp-

23  00141-RK, Docket No. 31, Exhibit A at 2:13;  *Oaktree Capital Group Holdings GP,*

24  *LLC'S Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No.

25  2:13-mp-00140-RK, Docket No. 37, Exhibit A at 2:13.

26         On May 9, 2014, Debtor filed replies to the Oaktree Entities' supporting

27  statements to provide reasoning for why Debtor believes the request for attorneys' fees

28  and costs is unreasonable.  *Debtor's Reply to Oaktree Capital Management, L.P. and*

1  *Oaktree Capital Group Holdings GP, LLC'S Statements in Support of Motions for*

2  *Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 32 at 1:3–14;

3  *Debtor's Reply to Oaktree Capital Management, L.P. and Oaktree Capital Group*

4  *Holdings GP, LLC'S Statements in Support of Motions for Attorneys' Fees and*

5  *Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 38 at 1:3-14.  Debtor argues that:

6  (1) Oaktree's own actions contributed to the Oaktree Entities' expenses in this matter

7  and such costs should not be borne by the Debtor; (2) the amount of fees for certain

8  tasks is unreasonable, overstated, and/or unsupported; (3) certain fees related to the

9  bankruptcy case in Colorado and not to the Oaktree matter in California; and (4) the

10  Oaktree Entities' fees are excessive.  *Debtor's Reply to Oaktree Capital Management,*

11  *L.P. and Oaktree Capital Group Holdings GP, LLC'S Statements in Support of Motions*

12  *for Attorneys' Fees and Expenses*, Case No. 2:13-mp-00141-RK, Docket No. 32 at

13  1:15-6:16; *Debtor's Reply to Oaktree Capital Management, L.P. and Oaktree Capital*

14  *Group Holdings GP, LLC'S Statements in Support of Motions for Attorneys' Fees and*

15  *Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 38 at 1:15-6:16.

16                                                 **Discussion**

17  **1.  The Oaktree Entities Are Entitled to Recover Attorneys' Fees and Costs**

18      **Under Fed. R. Civ. P. 45(d)(1) Because Debtor's Requests Presented Undue**

19      **Burden.**

20      Rule 45(d)(1) of the Federal Rules of Civil Procedure provides:

21              (d)  Protecting  a  Person  Subject  to  a  Subpoena;
        Enforcement.
22              (1) *Avoiding Undue Burden or Expense; Sanctions*  A party
        or attorney responsible for issuing and serving a subpoena
23              *must* take reasonable steps to avoid imposing undue burden
        or expense on a person subject to the subpoena. The court
24              for the district where compliance is required must enforce
        this duty and impose an appropriate sanction--which *may*
25              include lost earnings and reasonable attorney's fees--on a
        party or attorney who fails to comply (emphasis added).
26
27      When enforcing Rule 45(d)(1), "courts have discretion over the type and degree

28  of sanction imposed." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir.

1  2012).  As argued by the Oaktree Entities, some courts, including the Ninth Circuit

2  Bankruptcy Appellate Panel, have indicated a willingness to read Rule 45(d)(1) more

3  broadly.  *2:13-mp-00141-RK Motion* at 4:44-5:15; *2:13-mp-00140-RK Motion* at 5:22-

4  6:15, *citing inter alia, In re Shubov*, 253 B.R. 540, 547 (9th Cir. BAP 2000) ("When a

5  subpoena should not have been issued, literally everything done in response to it

6  constitutes 'undue burden and expense' . . .").  However, the Ninth Circuit itself has not

7  adopted this more expansive interpretation of Rule 45(d)(1).  *Mount Hope Church v.*

8  *Bash Back!*, 705 F.3d at 427.  The Ninth Circuit has instead held that "absent undue

9  burden imposed by an oppressive subpoena, a facially defective subpoena, or bad faith

10  on the requesting party," sanctions under FRCP 45(d)(1) are inappropriate.  *Id.*  Under

11  the rule requiring a party issuing a subpoena to take reasonable steps to avoid

12  imposing undue burden, under the Ninth Circuit's view in *Mount Hope Church,* the

13  "undue burden" language is limited to harm inflicted by complying with the subpoena.

14  *See id*. at 427-428.  Thus, under *Mount Hope Church,* greater emphasis is placed on

15  the recipient's burden than on the issuer's motive.  *Id*. at 428–29.

16      The Oaktree Entities argue Debtor did not take reasonable steps to avoid

17  imposing undue burden or expense.  *2:13-mp-00141-RK Motion* at 5:10-14; *2:13-mp-*

18  *00140-RK Motion* at 6:10-14.  The Oaktree Entities argue that: (1) the Oaktree Entities'

19  employees and attorneys had to attend four different hearings for requested information

20  that would be cumbersome, expensive to obtain, and irrelevant to the current litigation;

21  and (2) Debtor refused all reasonable attempts to resolve the dispute.  *Id.* at 6:10-18;

22  6:19-20.  The Oaktree Entities additionally argue and question whether Debtor's

23  concessions were made in good faith given that the Debtor has revealed its potential

24  plan to institute new litigation against the Oaktree Entities.  *Reply of Oaktree Entities to*

25  *Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's Fees and Expenses,*

26  Case No. 2:13-mp-00141-RK, Docket No. 19, at 7:13-16; *Reply of Oaktree Entities to*

27  *Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's Fees and Expenses,*

28  Case No. 2:13-mp-00140-RK Docket No. 25, at 7:13-16.

1    Debtor argues it did attempt to resolve and narrow the discovery disputes by: (1)

2    offering to reduce the two subpoenas into one subpoena if the Oaktree Entities would

3    advise the Debtor as to its corporate structure and identify which Oaktree entity had

4    involvement with Debtor's loans; (2) agreeing to withdraw document requests nos. 2, 3,

5    4, 16, 17, 24 and 26 prior to any motion being filed before this Court; (3) agreeing to

6    narrow the definition of "Oaktree" in the subpoena; and (4) attempting to bring the

7    matters before just one California court, instead of two.  *Debtor's Opposition to Oaktree*

8    *Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for*

9    *Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 8:12-9:14;

10   *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

11   *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

12   00140-RK, Docket No. 22 at 8:12–9:14.  Debtor also contends that it attempted to gain

13   better understanding of the Oaktree Entities' role in this manner and their corporate

14   structure, but its efforts were opposed.  *Debtor's Opposition to Oaktree Capital Group*

15   *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

16   *and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 10:27-11:1; *Debtor's*

17   *Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

18   *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

19   00140-RK, Docket No. 22 at 10:27–11:1.  The Oaktree Entities argue that Debtor's

20   asserted concessions are insubstantial because the discovery requests still required

21   the Oaktree Entities to provide information from individuals far removed from the deal.

22   *Reply of Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for*

23   *Attorney's Fees and Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 19 at 7:4-6;

24   *Reply of Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for*

25   *Attorney's Fees and Expenses,* Case No. 2:13-mp-00140-RK Docket No. 25 at 7:4-6.

26   Nevertheless,  Debtor maintains that the discovery requests to Oaktree were primarily

27   aimed at obtaining information reasonably calculated to lead to discovering admissible

28   evidence on valuation and evidence to defend against SIP's allegations of bad faith, as

1  well as the plethora of allegations asserted by SIP against the Debtor.  *Debtor's*

2  *Surreply on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings*

3  *GP, LLC'S Motions for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00140-RK,

4  Docket No. 30 at  2:20-24.

5          In this case, the court determines that Debtor did not take all of the reasonable

6  steps it could to prevent undue burden on the Oaktree Entities.  Much of the information

7  requested of the Oaktree Entities was irrelevant to the contested matters of the UST's

8  dismissal motion, SIP's stay relief motion and confirmation of Debtor's Chapter 11 plan.

9  Debtor disagreed with the Oaktree Entities' characterization of the issues before the

10  Colorado Bankruptcy Court:

11              Oaktree's statements in its pending Motion as to what issues
               are before the Bankruptcy Court are also inconsistent and
12              inaccurate.   First, Oaktree states that Judge Campbell
               "narrowed the issues for trial to plan feasibility and adequate
13              protection."   Then Oaktree states that "the Colorado
               bankruptcy court ruled (and the parties agree for purposes
14              of the underlying Motion to Compel and Motion to Quash)
               that the only relevant issues are 1) valuation; and 2) lack of
15              good faith.   Oaktree's statements are inconsistent and
               inaccurate, and are not supported by any citation to a
16              pleading or Court Order or transcript.

17  *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

18  *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

19  00141, Docket No. 16 at 9:14-21*; Debtor's Opposition to Oaktree Capital Group*

20  *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

21  *and Expenses*, Case No. 2:13-mp-00140-RK, Docket No. 22 at 9:14-21.  In response to

22  the Oaktree Entities' characterization of the issues before the Colorado Bankruptcy

23  Court, Debtor explained, "Debtor's Discovery to Oaktree was aimed at nonprivileged

24  information relevant to Debtor's proposed Chapter 11 Plan of Reorganization and the

25  Debtor's defenses to a pending motion to dismiss and a pending motion for relief from

26  stay, all of which involved multiple legal and factual issues including adequate

27  protection, valuation, interest rates, feasibility, all of the requirements in [11 U.S.C.]

28  § 1129, the Debtor's pre-petition and post-petition management of its assets, and the

1  Debtor's good faith in filing the Chapter 11 case." *Debtor's Opposition to Oaktree*

2  *Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for*

3  *Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 1:6-11 and

4  9:21-26*; Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree*

5  *Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-

6  mp-00140-RK, Docket No. 22 at 1:6-11 and 9:21-26.

7         Even accepting Debtor's descriptions of the purposes of its discovery requests to

8  the Oaktree Entities and the issues before the Colorado Bankruptcy Court, the

9  discovery requests in the document subpoenas to the Oaktree Entities sought irrelevant

10 information.  As acknowledged by Debtor, it had withdrawn document requests nos. 2,

11 3, 4, 16, 17, 24 and 26.  *Debtor's Opposition to Oaktree Capital Group Holdings GP,*

12 *LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees and*

13 *Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 8:21-22*; Debtor's Opposition to*

14 *Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s*

15 *Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22

16 at 8:21-22.  Debtor's withdrawal of these document requests was made in the joint

17 stipulation of the parties filed with the District Court, signed on October 28, 2013, before

18 the Oaktree Entities filed their motions to quash in that court on October 29, 2013, and

19 Debtor filed its motions to enforce the subpoenas on November 1, 2013.  *Joint*

20 *Stipulation Regarding Motions to Quash Debtor's Third Party Subpoena,* filed with the

21 District Court on October 29, 2013 (copy attached as Exhibit D to *Third-Party*

22 *Respondent's Opposition to Order to Show Cause on Debtor Morreale Hotel, LLC's*

23 *Motion to Enforce Subpoena and Compel the Production of Documents Pursuant to*

24 *Subpoena*, Case No. 2:13-mp-00141-RK, Docket No. 6).  Nevertheless, the remaining

25 document requests, nos. 1, 5-15, 18-23 and 25 that were not withdrawn and continued

26 to be asserted by Debtor still sought irrelevant information, that is, not relevant to the

27 issues before the Colorado Bankruptcy Court.  The court notes that Rule 401 of the

28 Federal Rules of Evidence provides: "Evidence is relevant if: (a) it has any tendency to

1 make a fact more or less probable than it would be without the evidence; and (b) the

2 fact is of consequence in determining the action."  The court recognizes, of course, that

3 whether or not the information sought is admissible evidence at trial is not the standard

4 of relevance for discoverable information under Rule 26(b)(1), but cites Fed. R. Evid.

5 401 for the general proposition that the discovery sought should have some bearing on

6 the issues to be litigated.

7        The outstanding requests in Debtor's subpoenas to the Oaktree Entities sought

8 all written or recorded documents, communications, and correspondence between First

9 Tier Bank and Oaktree from 2008 to present relating to Debtor's Hotel Properties and

10 loans relating to those properties (i.e., the Colfax Loan and the Broadway Loan)

11 (request no. 1); the same between the City and County of Denver and Oaktree (request

12 no. 5); the same between SIP and Oaktree (request no. 6); all documents evidencing

13 what Oaktree received in payments, reimbursements, or compensation for managing

14 the loans (request no. 7); all documents evidencing what Oaktree paid to the FDIC for

15 the Colfax Loan (request no. 8); all documents evidencing what Oaktree paid to the

16 FDIC for the Broadway Loan (request no. 9); all documents evidencing what Oaktree

17 paid to the FDIC to acquire SIP (request no. 10); all documents evidencing how

18 Oaktree evaluated and valued the Debtor's Hotel Properties from 2008 to present

19 (request no. 11); all documents evidencing any agreement between Oaktree and the

20 FDIC regarding the Colfax Loan (request no. 12); all documents evidencing any

21 agreement between Oaktree and the FDIC regarding the Broadway Loan (request no.

22 13); all documents evidencing any payment, advance, or reimbursement from the FDIC

23 to Oaktree under any agreement in connection with the Broadway loan (request no.

24 14);  all documents evidencing any payment, advance, or reimbursement from the FDIC

25 to Oaktree under any agreement in connection with the Colfax loan (request no. 15);  all

26 minutes of meetings of Oaktree, including the boards of directors and all committees,

27 relating to Debtor or its principal, Jesse Morreale (request no. 18); all internal

28 communications at Oaktree, including between any employees, boards of directors and

1  all committees, of Oaktree and its parent companies, relating to Debtor or its principal,

2  Jesse Morreale (request no. 19); full copies of all appraisals, broker's price opinions,

3  market analyses, valuation reports, and other valuations, including all updates and

4  supplements, for the Broadway Property, whether requested by First Tier Bank, the

5  FDIC, Oaktree, or SIP (request no. 20); full copies of all appraisals, broker's price

6  opinions, market analyses, valuation reports and other valuations, including all updates

7  and supplements, for the Colfax Property, whether requested by First Tier Bank, the

8  FDIC, Oaktree, or SIP (request no. 21); all documents, records, and notes from

9  meetings, discussions, and other communications with Debtor or its principal, Jesse

10  Morreale (request no. 22); all documents, and other communications regarding Debtor's

11  principal Jesse Morreale's emails to Howard Marks and responses from Mark Jacobs at

12  Oaktree to Jesse Morreale (request no. 23); and all documents, including

13  organizational, operating, and servicing agreements, that set forth Oaktree's policy or

14  restrictions regarding Oaktree's loans that are secured by real property with

15  environmental or hazardous materials issues (request no. 25).

16         Debtor argues that these outstanding document requests sought relevant

17  information, but saying so does not make it necessarily so.   Under Rule 26(b)(1) of the

18  Federal Rules of Civil Procedure, each party generally has the right to discover "any

19  nonprivileged matter that is relevant to any party's claim or defense."  See also, 2

20  Schwarzer, Tashima and Wagstaffe, *California Practice Guide: Federal Civil Procedure*

21  *Before Trial*, ¶ 11:610 at 11-82 (2014).  In addition, under Rule 26(b)(1), "for good

22  cause," the court may permit discovery of information "relevant to the subject matter

23  involved in the action."  *Id.*   A party's right to take discovery is subject to certain

24  limitations on the frequency and extent of discovery regarding proportionality between

25  the costs and benefits of discovery, including Rules 26(b)(2)(C) and 45(d)(1) of the

26  Federal Rules of Civil Procedure.  Rule 26(b)(2)(C) provides: "On motion or on its own,

27  the court must limit the frequency or extent of discovery otherwise allowed by these

28  rules or by local rule if it determines that: . . . (iii) the burden or expense of the proposed

1  discovery outweighs its likely benefit, considering the needs of the case, the amount in

2  controversy, the parties' resources, the importance of the issues at stake in the action,

3  and the importance of the discovery in resolving the issues."  See also, 2 Schwarzer,

4  Tashima and Wagstaffe, *California Practice Guide: Federal Civil Procedure Before*

5  *Trial*, ¶ 11:543 at 11-73, *citing Coleman v. American Red Cross,* 23 F.3d 1091, 1098

6  (6th Cir. 1994) (defendant would have been required "to search every file that exists" at

7  its headquarters to locate requested documents).   Rule 45(d)(1) provides that "[a] party

8  or attorney responsible for issuing and serving a subpoena must take reasonable steps

9  to avoid imposing undue burden or expense on a person subject to the subpoena."

10       Debtor and its counsel were given opportunities to explain how its outstanding

11  document requests were relevant to the issues before the Colorado Bankruptcy Court

12  on the three discrete litigation matters, i.e., the United States Trustee's motion to

13  dismiss, SIP's stay relief motion and Debtor's plan confirmation, and its explanations in

14  its oppositions are non-specific and unresponsive.  *Debtor's Opposition to Oaktree*

15  *Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for*

16  *Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 6-12*;*

17  *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

18  *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

19  00140-RK, Docket No. 22 at 6-12.  The court raised the issue of relevance of the

20  requested discovery in the document subpoenas, which was discussed between the

21  court and counsel at the hearings on November 18 and 20, 2013.  *Audio Recording of*

22  *Proceedings on November 20, 2014, 1:28 to 1:48 p.m. and on November 21, 2013,*

23  *1:59 to 3:24 p.m.* Case Nos. 2:13-mp-00140-RK and 2:13-mp-oo141-RK,  At the

24  hearing on November 21, 2013, the court asked counsel for Debtor to explain the

25  relevance of the outstanding document requests, and counsel for Debtor was not able

26  to articulate specific and responsive reasons why the discovery was relevant.

27  *Transcript of Proceedings on November 21, 2013,* Case No. 2:13-mp-00140-RK,

28  Docket No. 21 at 7-17.  Accordingly, the court determined that Debtor's outstanding

1   document requests did not seek relevant information and ruled that the document

2   subpoenas should be quashed.  *Id.*

3          For example, Debtor's requests for all documents showing what the Oaktree

4   Entities are paid for managing the loans (Document Request No. 7), what they paid for

5   the interests in the asset loans (Document Requests Nos. 8 and 9), what they paid to

6   acquire SIP (request no. 10), what agreements they had with the FDIC regarding the

7   asset loans (Document Request Nos. 12 and 13), and what payments they received

8   from the FDIC regarding the asset loans (Document Request Nos. 14 and 15) have

9   little or no relevance or bearing to the issues of feasibility of Debtor's Chapter 11 plan,

10  including valuation of the assets, adequate protection of the secured lender's interest in

11  the assets, and Debtor's good faith in filing the Chapter 11 case and the Chapter 11

12  plan.   Moreover, Debtor's request for all documents, including organizational, operating

13  and servicing agreements, that set forth the Oaktree Entities' policy and restrictions

14  regarding their loans secured by real property with environmental or hazardous

15  materials issues (Document Request No. 25) has little or no relevance or bearing to

16  these issues.   Furthermore, Debtor failed to show how all documents, communications,

17  and correspondence between the Oaktree Entities and First Tier Bank, the original

18  lender, the Oaktree Entities and the City and County of Denver, and the Oaktree

19  Entities and the SIP it requested (Document Request Nos. 1, 5 and 6) had any

20  relevance or bearing to the issues of feasibility of Debtor's Chapter 11 plan, adequate

21  protection of the lender's secured interests, or Debtor's good faith.  Debtor also failed to

22  show how all minutes of meetings of the Oaktree Entities, including boards of directors

23  and all committees and internal communications of the Oaktree Entities, including all

24  employees, boards of directors and committees relating to Debtor and its principal,

25  Jesse Morreale, and all documents, records and notes from meetings, discussions and

26  other communications with Debtor and its principal, Mr. Morreale, it requested

27  (Document Request Nos. 18, 19 and 23) had any relevance or bearing to the issues of

28  feasibility of Debtor's Chapter 11 plan, adequate protection of the lender's secured

1    interests, or Debtor's good faith, which are really matters of the Debtor's efforts or

2    conduct rather than those of the Oaktree Entities.  None of these described requests

3    sought information probative of the issues before the Colorado Bankruptcy Court and

4    imposed a disproportionate and undue burden on the Oaktree Entities to conduct

5    extensive and exhaustive searches of their business records.  Fed. R. Civ. P.

6    26(b)(2)(C)(iii)  and 45(d)(1); 2 Schwarzer, Tashima and Wagstaffe, *California Practice*

7    *Guide: Federal Civil Procedure Before Trial*, ¶ 11:543 at 11-73, *citing Coleman v.*

8    *American Red Cross,* 23 F.3d at 1098 (defendant would have been required "to search

9    every file that exists" at its headquarters to locate requested documents).  As another

10   example, Debtor requested information that would be expensive and cumbersome to

11   obtain from individuals who are far removed from the litigation, including Oaktree L.P.'s

12   CEO Howard Marks (Document Request No. 23) without any showing of involvement of

13   such individuals in this matter.

14          Thus, based on the foregoing discussion, the subject subpoenas unreasonably

15   forced the Oaktree Entities as nonparty subpoena respondents to undertake extensive

16   searches of their computer and document files for such irrelevant information, which

17   would be both unnecessary and burdensome.  Despite that the Debtor agreed to

18   withdraw certain document requests and narrow its definition of "Oaktree," the Oaktree

19   Entities would still be forced to canvas every entity in their large corporate structure to

20   satisfy the unreasonably wide breadth of the Debtor's document subpoenas.  Based on

21   these circumstances, the court in quashing the subpoenas determined that Debtor's

22   requests for irrelevant information were not reasonably calculated to prevent undue

23   burden upon the Oaktree Entities.

24          Accordingly, the court determines that the Oaktree Entities' request for sanctions

25   under Fed. R. Civ. P. 45(d)(1) should be granted based on their showing of undue

26   burden.

27          ///

28

**2. The Oaktree Entities Are Entitled to Recover Attorneys' Fees and Costs Under Fed. R. Civ. P. 37(a)(5) Because Debtor's Motions to Compel and Response to the Motions to Quash Were Not Substantially Justified.**

Fed. R. Civ. P 37(a)(5) provides in pertinent part:

(5) *Payment of Expenses; Protective Orders.*

(A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
(iii) other circumstances make an award of expenses unjust.

(B) *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

(C) *If the Motion is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, thecourt may issue any protective order authorized under Rule 26( c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

"A request for discovery is 'substantially justified' under the rule if reasonable people could differ as to whether the party requested must comply." *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982) (implied overruling on other grounds recognized by *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1055

21

1   n. 2 (9th Cir. 2007)).  The burden is on the losing party to affirmatively demonstrate that

2   its position was substantially justified.  2 Schwarzer, Tashima and Wagstaffe, *California*

3   *Practice Guide: Federal Civil Procedure before Trial*, ¶ 11:2382 at 11-340 (citing

4   Advisory Committee Notes to 1970 Amendment to former Fed. R. Civ. P. 37(a)(4)).

5        While courts are free to award expenses, Rule 37(a)(5) is really aimed at curbing

6   discovery abuses and preventing waste of judicial time when there is no genuine

7   dispute.  2 Schwarzer, Tashima and Wagstaffe, *California Practice Guide: Federal Civil*

8   *Procedure before Trial*, ¶ 11:2386 at 11-341.  Thus, where there is *legitimate difference*

9   *of opinion*, an award of expenses is usually improper.  *Id*.  However, as the Oaktree

10  Entities assert, Debtor should have known that its subpoenas were improper based on

11  the Colorado Bankruptcy Court's ruling that the only relevant issues subject to

12  discovery were valuation of Debtor's real property assets and Debtor's good or bad

13  faith in proposing its Chapter 11 plan.  *2:13-mp-00141-RK Motion* at 6:22-26; *2:13-mp-*

14  *00140-RK Motion* at 7:22-26.  The Oaktree Entities argue that this court had held that

15  any issue regarding valuation must be tied to the value of the properties at the time of

16  confirmation; hence, even if the Oaktree Entities had information regarding value, it

17  would be outdated and irrelevant.  *Id.*  Moreover, the Oaktree Entities contend that any

18  evidence regarding the Debtor's good or bad faith should have come from the Debtor,

19  not a third party, and so the instant subpoena was not substantially justified.  *2:13-mp-*

20  *00141-RK Motion* at 6:26-27; *2:13-mp-00140-RK Motion* at 7:26-27.  Furthermore, the

21  extensive document requests regarding what the Oaktree Entities paid for the interests

22  in the loans, their loan policies and practices, and their communications with third

23  parties like the FDIC and the City and County of Denver were irrelevant to the issues of

24  valuation of Debtor's assets, Debtor's good faith and feasibility of Debtor's

25  reorganization plan, which were the issues raised by the contested litigation matters of

26  case dismissal, stay relief, and plan confirmation.

27        Debtor argues that its issuance of subpoenas to the Oaktree Entities and the

28  related motions to compel were substantially justified because the Oaktree Entities

1    were not forthcoming with information regarding their corporate structure, and Debtor

2    issued a subpoena directly to the Oaktree Entities for the same documents that the

3    parties agreed, or that the Colorado Bankruptcy Court ordered, to be produced by SIP.

4    *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

5    *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

6    00141, Docket No. 16 at 11:15-21; *Debtor's Opposition to Oaktree Capital Group*

7    *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

8    *and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22 at 11:15-21.  Debtor

9    further argues that it was justified to rely upon the statements of the FDIC to contact the

10   Oaktree Entities regarding its loans.  *Debtor's Opposition to Oaktree Capital Group*

11   *Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees*

12   *and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 11:23-26; *Debtor's*

13   *Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

14   *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

15   00140-RK, Docket No. 22 at 11:23–26.  Finally, Debtor contends that the documents

16   Debtor sought from the Oaktree Entities were relevant and could have had bearing on

17   the contested matters, and that the subpoenas were issued in good faith and

18   substantially justified given the circumstances of this case.  *Debtor's Opposition to*

19   *Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s*

20   *Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at

21   12:6-9; *Debtor's Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree*

22   *Capital Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-

23   mp-00140-RK, Docket No. 22 at 12:6-9.  However, as discussed previously, Debtor had

24   requested that the Oaktree Entities produce documents that had no relevance to the

25   issues before the Colorado Bankruptcy Court, and thus, to this extent, Debtor cannot

26   show that it was substantially justified in seeking to compel this document discovery.

27   Debtor's reliance on the purported representations of the Colorado Bankruptcy Court

28   and the FDIC to justify its document requests is misplaced; reasonable people could

1  not differ as to whether the Oaktree Entities should comply with its requests for

2  irrelevant information.   In this court's view, there can be no legitimate difference of

3  opinion on whether Debtor should have compelled the Oaktree Entities to produce

4  documents that are irrelevant to the issues being litigated.

5          However, the court notes that Debtor, as part of its document subpoenas,

6  requested valuation information relating to its properties, and that there may be some

7  relevance to this information because valuation had some bearing on whether the

8  lender's lien interests were adequately protected and whether Debtor's reorganization

9  plan was feasible.  This relates to the pending stay relief and dismissal motions and

10 plan confirmation.  Debtor made requests for valuation information in the document

11 subpoenas, specifically, all documents evidencing how Oaktree evaluated and valued

12 the Debtor's Hotel Properties from 2008 to present (request no. 11); full copies of all

13 appraisals, broker's price opinions, market analyses, valuation reports, and other

14 valuations, including all updates and supplements, for the Broadway Property, whether

15 requested by First Tier Bank, the FDIC, Oaktree, or SIP (request no. 20); and full

16 copies of all appraisals, broker's price opinions, market analyses, valuation reports, and

17 other valuations, including all updates and supplements, for the Colfax Property,

18 whether requested by First Tier Bank, the FDIC, Oaktree, or SIP (request no. 21).

19 These requests were arguably relevant to the issues before the Colorado Bankruptcy

20 Court.  The Oaktree Entities argued that this information was too attenuated to be

21 relevant.  In this court's view, one of these requests sought completely irrelevant

22 information, but the two other requests arguably sought relevant information.  As to

23 information about what Oaktree personnel thought about valuation of the Debtor's

24 properties, the court agrees with the Oaktree Entities that this information was too

25 attenuated to be relevant because the valuation of Debtor's properties should be made

26 based on objective assessments of valuation based on scientifically accepted methods

27 of valuation and not based on subjective evaluations of what individuals in the Oaktree

28 Entities may have thought were the value of the Debtor's properties or what motivated

24

1  them to obtain valuations of the properties.  Such consideration warranted this court's

2  rulings to quash the subpoenas as to this requested material.

3         The other requests for appraisals and similar valuation reports and opinions for

4  the Debtor's Colfax and Broadway properties from 2008 to present arguably sought

5  relevant information relating to the valuation of these properties for the issues of stay

6  relief, dismissal, and plan confirmation before the Colorado Bankruptcy Court.

7  Although the court quashed the subpoenas as to all of these requests for valuation

8  information, and, as the Oaktree Entities argued, the valuation of the properties should

9  be based on objective assessments of valuation data available to Debtor from other

10 sources, and the relevance of old valuation reports going back to 2008 may be

11 somewhat attenuated due to their age, the court cannot find upon further consideration,

12 despite its skepticism expressed at the hearings on November 20 and 21, 2013, that

13 these requests sought completely irrelevant information, particularly after Debtor

14 agreed at the November 20, 2013 hearing to limit its requests to valuation to 2011 when

15 the Oaktree Entities first had involvement with the loan portfolio with Debtor's loans and

16 afterwards .   Thus, the court finds that Debtor's requests for this information militates in

17 part the need to award fees and expenses.[2]

18        Accordingly, as discussed herein, the court determines that it should award

19 ─────────────────
   [2]   Debtor in its oppositions to the motions argues that it "believes there are relevant documents in
20 possession of Oaktree that could have bearing on the relief from stay or plan confirmation issues,
   particularly with internal valuations and communications that would tend to support Debtor's reasons for
21 filing its Chapter 11 case in good faith and the terms proposed in the Plan."  *Debtor's Opposition to
   Oaktree Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys'
22 Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 12:6-9; *Debtor's Opposition to Oaktree
   Capital Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys' Fees
23 and Expenses,* Case No. 2:13-mp-00140-RK, Docket No. 22 at 12:6–9.  As discussed herein, other
   valuations might have some arguable relevance, though probably minimal, to the valuation of the
24 properties for plan confirmation and stay relief, though originally going back to 2008, but later limited to
   2011 and afterwards, was remote in terms of relevancy for valuation for plan confirmation purposes as of
25 a hearing date then scheduled for January 2014.  But in response to Debtor's arguments, the court
   determines that internal communications within the nonparty Oaktree Entities regarding valuation were
26 irrelevant to the purposes of valuation, plan feasibility and Debtor's good faith in filing the Chapter 11
   case, the issues before the Colorado Bankruptcy Court.  Debtor's just saying such communications
27 indicating some sort of party motivation, for example, were relevant does not make it so, even if the
   Oaktree Entities were parties, which status Debtor had not shown in these proceedings.

28

1   attorneys' fees and costs to the Oaktree Entities associated with the litigation matters

2   relating to the defense of the Debtor's document subpoenas because, for the most part,

3   Debtor's document requests in the subpoenas to the Oaktree Entities were not

4   substantially justified.

5       3.   **The Oaktree Entities Complied with Local Bankruptcy Rule 7054-1.**

6       Pursuant to Local Bankruptcy Rule ("LBR") 7054-1(a), a court can award costs to

7   the prevailing party when costs are allowed by the FRBP or other applicable law.  The

8   prevailing party must file and serve a bill of costs no later than thirty days after entry of

9   the judgment.  LBR 7054-1(c).  Additionally, a party seeking an award of attorneys' fees

10  must file and serve a motion no later than thirty days after the entry of judgment or

11  other final order.  LBR 7054-1(g).

12      This court granted the Oaktree Entities' motions to quash Debtor's document

13  subpoenas and denied Debtor's motions to enforce the subpoenas. *Order on Oaktree*

14  *Capital Group Holdings GP, LLC's Motion to Quash the Debtor's Third Party Subpoena*,

15  Case No. 2:13-mp-00141-RK, Docket No. 11 at 2:1;  *Order on Oaktree Capital Group*

16  *Holdings GP, LLC's Motion to Quash the Debtor's Third Party Subpoena*, Case No.

17  2:13-mp-00140-RK, Docket No. 12 at 2:1; *Order on Order to Show Cause on Debtor*

18  *Morreale Hotels, LLC's Motion to Enforce Subpoena and Compel the Production of*

19  *Documents Pursuant to Subpoena,* Case No. 2:13-mp-00141-RK, Docket No. 10 at

20  2:13; *Order on Order to Show Cause on Debtor Morreale Hotels, LLC's Motion to*

21  *Enforce Subpoena and Compel the Production of Documents Pursuant to Subpoena,*

22  Case No. 2:13-mp-00141-RK, Docket No. 13 at 2:13.  Accordingly, the Oaktree Entities

23  are the prevailing parties and may seek reimbursement of costs and attorneys' fees, as

24  they did by filing the instant motions.

25      ///

26      ///

27

28

**4. The Court Determines that Attorneys' Fees are Generally Reasonable under Lodestar Method, But Awards Partial Fees Because Debtor's Actions regarding Its Document Subpoenas Were Not Entirely Substantially Justified.**

Pursuant to Fed. R. Civ. P. 37, if a discovery enforcement motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred on the motion among the parties in a just manner. *See* Fed. Rule Civ. P. 37(a)(5)(B) and (C); 2 Schwarzer, Tashima and Wagstaffe, *California Practice Guide: Federal Civil Procedure before Trial*, ¶ 11:2385 at 11-341. A starting point for determining a reasonable fee amount is the lodestar method – the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing party should make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 433-434. The court has discretion in determining the number of hours that were reasonably expended by the prevailing lawyers. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001). Courts need not attempt to portray the discretionary analyses that lead to their numerical conclusions as elaborate mathematical equations, but must provide sufficient insight into the court's exercise of discretion. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 485 (9th Cir. 1988). The court departs from a pure lodestar method analysis because the billing entries contemporaneously prepared by counsel for the Oaktree Entities did not separate for services later determined by the court to have been for opposing improper discovery as opposed to proper discovery, and it is impractical to sort out now what fees were incurred for working on improper discovery versus proper discovery. The court has attempted in its decision to comply with Fed. R. Civ. P. 37(a)(5) after giving an opportunity to be heard, by apportioning the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(B) and (C).

Here, the court finds the appropriate amount that should be awarded to the Oaktree Entities to be $25,000.00. The court determines that the rates and hours

claimed in services are generally reasonable under the lodestar method for the work

performed and do not appear to be disproportionate to the tasks involved, which

required extensive briefing and multiple appearances at hearings on an expedited

schedule on the discovery enforcement motions to address the various arguments of

Debtor why the numerous, detailed requests in the document subpoenas were proper.

For example, the work of the three attorneys whose time entries are submitted (Weiss,

Schuenemann and Moynihan) does not appear to be duplicative or cumulative to

warrant a finding of lack of reasonableness since it appears that they worked on

discrete tasks relating to this highly contested matter.  Partial fees, however, should be

awarded as discussed herein because Debtor's actions to enforce its document

subpoenas were for the most part not substantially justified, though not entirely so.

Fed. R. Civ. P. 37(a)(5)(A), (B) and (C).  The court recognizes that Debtor had

withdrawn some of its document requests after consultation with the Oaktree Entities

before the motions to quash and to enforce the subpoenas were filed, that the parties

had met and conferred afterwards as part of efforts to lessen the undue burden on the

Oaktree Entities in complying with the document subpoenas, that Debtor agreed to

narrow several of the requests (i.e., narrowing requested valuation information to 2011

and afterwards, and narrowing its requests to communications with a list of specifically

named individuals affiliated with the Oaktree Entities) and that most, but not all, of the

categories of documents requested in the document subpoenas remaining in dispute

between the parties sought irrelevant information and were not substantially justified.

As to specific fees claimed, the court further determines that the in-house counsel

employee for the Oaktree Entities, Cary Kleinman, in describing the corporate structure

served as percipient witness rather than as retained counsel; therefore, such fees for

the hours expended to attend hearings ($1,750.00) are not awardable.  Additionally, a

detailed account of the hours expended by Monica A. Kohles was not provided in the

Statements Supporting the Motions; thus, it is unknown whether that amount requested

by that professional is reasonable.

1    Moreover, the Oaktree Entities' original motions for attorneys' fees requested a

2    total of $28,155.00 in fees and $1,750.00 in costs, but later submitted in the subsequent

3    detailed Statements a computation of $49,495.00 in fees in response to the court's

4    request for specific and detailed billing entries for the claimed fees.  *2:13-mp-00141-RK*

5    *Motion* at 1:4-5; *2:13-mp-00140-RK Motion* at 2:4-5; *Oaktree Capital Group Holdings*

6    *GP, LLC'S Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No.

7    2:13-mp-00141-RK, Docket No. 31 at 1:4-5;  *Oaktree Capital Group Holdings GP,*

8    *LLC'S Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No.

9    2:13-mp-00141-RK, Docket No. 37, *Exhibit A at* 2:13;  *Oaktree Capital Group Holdings*

10   *GP, LLC'S Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No.

11   2:13-mp-00140-RK, Docket No. 31 at 1:4-5;  *Oaktree Capital Group Holdings GP,*

12   *LLC'S Statement in Support of Motion for Attorneys' Fees and Expenses*, Case No.

13   2:13-mp-00140-RK, Docket No. 37, *Exhibit A at* 2:13.  A request for attorneys' fees

14   should not result in a second major litigation.  *Hensley v. Eckerhart*, 461 U.S. at 437.

15   Based on the moving papers, the Oaktree Entities apparently incurred $21,340.00 in

16   fees after the court made its rulings to quash the document subpoenas on November

17   21, 2013 to collect the $28,155.00 in fees incurred before on the subpoena

18   enforcement motions.  Such fees are disproportionate to the amount of fees incurred in

19   opposing the subpoenas, and thus it is unreasonable for Debtor to completely bear

20   such expenses.  *See In re Puget Sound Plywood, Inc.,* 924 F.2d 955, 961 (9th Cir.

21   1991)(in determining reasonableness of attorneys' fees under 11 U.S.C. § 330, Ninth

22   Circuit stated that attorney seeking reasonable fees had the "obligation to consider the

23   potential for recovery and balance the effort required against the results that might be

24   achieved").  The court need not provide a detailed account of each amount that is

25   reasonable or unreasonable.  *See Cunningham v. County of Los Angeles*, 879 F.2d at

26   485-486; *see also,* Fed. R. Civ. P. 37(a)(5)(C) (where the discovery enforcement motion

27   is granted in part and denied in part, the court may apportion reasonable expenses for

28   the motion; Fed. R. Civ. P. 37(a)(5)(B) (payment of reasonable expenses are awardable

1   to the prevailing party if the motion is denied unless the motion was substantially

2   justified or other circumstances make an award unjust.)

3          Pursuant  to Fed. R. Civ. P. 37(a)(5)(B) and (C), the court is to take into account

4   the extenuating circumstances as discussed herein that renders an award of the total

5   amount requested by the Oaktree Parties unjust, namely, the moving papers

6   themselves only requested about $28,000, but movants submitted documentation for

7   about $49,000; some of the fees were for in-house counsel whose participation in the

8   matters were in the nature of a witness; fees as to one attorney are undocumented;

9   movants agreed to withdraw or narrow some of their requests in the document

10  subpoenas (i.e., limiting valuation data to 2011 and afterwards, providing a list of

11  individuals affiliated with the Oaktree Entities whose communications Debtor sought to

12  examine, and narrowing the list of entities for which discovery was sought based on

13  discussions at settlement negotiations and hearings); some of the unsettled requests

14  for information in the document subpoenas did not seek completely irrelevant material

15  and had some justification; and the fees incurred on these motions are disproportionate

16  to the fees incurred in opposing the subpoena enforcement motions on the merits.

17  Accordingly, under the circumstances, the court determines that it is appropriate to

18  award the Oaktree Entities on their motions for attorneys' fees and costs in the amount

19  of $25,000.00, and that the circumstances as described herein would make it unjust to

20  award a greater amount.

21         The court determines that Debtor and its counsel, Kutner Brinen Garber, P.C.,

22  are both responsible for the sanctionable conduct and have joint and several liability for

23  the award of sanctions.  Fed. R. Bankr. P. 7037, 9014 and 9016; Fed. R. Civ. P.

24  37(a)(5) and 45(d)(1); *see also, Hyde & Drath v. Baker,* 24 F.3d 1162, 1171-1173 (9th

25  Cir. 1994) (interpreting related provision under Fed. R. Civ. P. 37(d)).  The issuance

26  and service of the document subpoenas containing the improper requests for irrelevant

27  material was made by counsel at the behest of the client, Debtor.  Both should have

28  known better, especially after considering the opposition of the Oaktree Entities to the

1  improper discovery requests, which they did not heed, prompting this court's orders

2  quashing the subpoenas.  Debtor and its counsel had multiple opportunities to

3  reconsider and withdraw their document requests in the subpoenas seeking irrelevant

4  information in the prefiling consultation and meeting with counsel for the Oaktree

5  Entities before the motions to quash and enforce subpoenas were filed, and after these

6  motions were filed, particularly in the conferences between counsel and with the court

7  at the hearings in this case and before and after the hearings, but before the court's

8  rulings granting the motions to quash and denying the motions to enforce.

9    **5.  The Oaktree Entities' Assertion that Debtor's Opposition is Actually a**

10      **Motion for Reconsideration Is Not Relevant to the Instant Motion.**

11       The Oaktree Entities argue that Debtor, in its Opposition, discusses how the

12  Oaktree Entities are related to SIP and connected to the Debtor's loan in an attempt to

13  provide argument for why this court's ruling on November 21, 2013, was wrong.  *Reply*

14  *of Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's*

15  *Fees and Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 19, at 7:22-28; *Reply of*

16  *Oaktree Entities to Debtor Morreale Hotel, LLC's Opposition to Motion for Attorney's*

17  *Fees and Expenses,* Case No. 2:13-mp-00140-RK Docket No. 25, at 7:22-28.  In both

18  its Opposition and Surreply, Debtor asserts that it is not seeking reconsideration of this

19  Court's Orders entered on December 4, 2013.  *Debtor's Opposition to Oaktree Capital*

20  *Group Holdings GP, LLC and Oaktree Capital Management, L.P.'s Motion for Attorneys'*

21  *Fees and Expenses,* Case No. 2:13-mp-00141, Docket No. 16 at 12:11; *Debtor's*

22  *Opposition to Oaktree Capital Group Holdings GP, LLC and Oaktree Capital*

23  *Management, L.P.'s Motion for Attorneys' Fees and Expenses,* Case No. 2:13-mp-

24  00140-RK, Docket No. 22 at 12:11; *Debtor's Surreply on Oaktree Capital Management,*

25  *L.P. and Oaktree Capital Group Holdings GP, LLC'S Motions for Attorneys' Fees and*

26  *Expenses,* Case No. 2:13-mp-00141-RK, Docket No. 24 at 3:8-10;  *Debtor's Surreply*

27  *on Oaktree Capital Management, L.P. and Oaktree Capital Group Holdings GP, LLC'S*

28  *Motions for Attorneys' Fees and Expenses,* Case No. 2:13-mp-00140-RK, Docket No.

1  30 at 3:8-10.  In this regard, the court agrees with Debtor that an analysis of whether

2  the Opposition is actually a motion for reconsideration is not relevant to an analysis of

3  the instant motion.

4                                          **Conclusion**

5          For the foregoing reasons, the court determines the motions of the Oaktree

6  Entities should be granted in part to award partial attorneys' fees in the amount of

7  $25,000.00 and that Debtor and its counsel, Kutner Brinen Garber, P.C., are jointly and

8  severally liable for payment of this award of fees.  The court specifies that this is one

9  award for the Oaktree Entities in both of the miscellaneous cases, and not two separate

10 awards for each Oaktree Entity in each case.  Separate orders in each miscellaneous

11 case awarding fees and costs will be entered concurrently herewith.

12         IT IS SO ORDERED.

13                                          ###

14

15

16

17

18

19

20

21

22

23

24  Date: September 8, 2014          _____

25                                          Robert Kwan
                                           United States Bankruptcy Judge
26

27

28